FABIÁN SÁNCHEZ REYES, ETC., ET AL., demandantes y recurridos, *v.* SECRETARIO DE JUSTICIA, demandado y peticionario.

*Número:* O-75-504     *Resuelto:* 26 de enero de 1976

*Miriam Naveira de Rodón, Procuradora General, Maggie Correa Avilés, Procuradora General Auxiliar,* abogadas del peticionario; *Samuel Ramírez Torres,* abogado de los recurridos.

SENTENCIA

Los demandantes en los casos de epígrafe cursaron un Requerimiento de Admisiones al Secretario de Justicia bajo lo dispuesto en la Regla 33.1 de las de Procedimiento Civil pero no fijaron en el requerimiento un plazo para contestarlo. Por haber transcurrido en exceso de diez (10) días sin que se contestaran los requerimientos el tribunal de instancia dictó sentencia dando por admitidas las cuestiones objeto del requerimiento y en su consecuencia decretó la nulidad de las confiscaciones de varios vehículos de motor que alegadamente habían sido utilizados para cargar, transportar, llevar y trasladar material relacionado con la bolita.

El Secretario de Justicia recurre ante nos solicitando la revocación de las sentencias dictadas. Sostiene el peticionario que la ley no fija un término para contestar el Requerimiento de Admisiones.

Expedimos orden dirigida a los recurridos para que mostraran causa por la cual no debían revocarse las sentencias dictadas en vista de nuestra decisión en *Menéndez García* v. *Tribunal Superior,* 101 D.P.R. 667 (1973).

La Regla 33.1 establece, en lo que es aquí pertinente:

"Todas las cuestiones sobre las cuales se solicite una admisión se tendrán por admitidas, a menos que dentro de un plazo designado en el requerimiento, que no será menor de 10 días después de su notificación, dentro del plazo menor o mayor que el tribunal concediere mediante moción y notificación, la parte a quien va dirigido el requerimiento notifique y entregue a la parte que requiere la admisión, . . . ."

Los recurridos sostienen en su mostración de causa que de no designarse un plazo en el requerimiento se aplica el término de diez (10) días. No tienen razón.

·Ya·en *Menéndez*, supra, resolvimos que la designación del plazo para contestar el requerimiento de admisión debe aparecer claramente del escrito original o de uno posterior suplementario si es que se interesa el beneficio de una admisión automática por la falta de la parte requerida en contestar. La Regla 33.1 exige la designación del plazo que no será menor de 10 días. Los peticionarios no hicieron designación de plazo.

La Regla 36 federal, equivalente a la 33 nuestra, exige desde 1970 un término de treinta días para contestar. Aunque es deseable que la nuestra contenga un término fijo aún no lo hemos adoptado.

Se revocan las sentencias dictadas por el Tribunal Superior, Sala de Aibonito, en 12 de septiembre de 1975, en las que se declara la nulidad de las confiscaciones de vehículos realizadas por el Secretario de Justicia en los casos de los recurridos, y en su consecuencia se continuarán los procedimientos en el tribunal de instancia.

Así lo pronunció y manda el Tribunal y certifica el Secretario. El Juez Asociado Señor Rigau disintió en opinión separada.

(Fdo.) Angel G. Hermida
*Secretario*

—O—

Opinión disidente del Juez Asociado Señor Rigau.

San Juan, Puerto Rico, a 26 de enero de 1976

Que el derecho no es estático pero que a la vez tiene que ofrecer garantía de estabilidad y de seguridad, es una de las paradojas con que se han confrontado jueces y juristas por siglos. (¹)

---

(¹) Castán, *Teoría de la Aplicación e Investigación del Derecho* (1947), pág. 356; Pound, *Law Finding Through Experience and Reason* (1960), pág. 23; Allen, *Law in the Making*, 7a. ed. (1964), pág. 346; Pound, *Inter-*

El caso de autos es, a mi juicio, uno en el cual nos topamos con esa disyuntiva. En esta materia de la "bolita" estimo que nos hemos quedado en el pasado y lo que ayer era futuro incierto hoy ha invadido el presente sin que podamos pretender desconocerlo. [2]

En el pasado sostuvimos centenares de veces la Ley de la Bolita a base del principio, de rango constitucional, de que el poder de policía del estado autorizaba a éste a prohibir la práctica de dicho juego de azar y en consecuencia lo autorizaba a recluir en la cárcel a los que interviniesen en el mismo y a confiscar la propiedad utilizada en relación con ese juego. La razón de porqué eso debía ser así nunca afloró muy claramente ni en la ley ni en los casos. Independientemente de las racionalizaciones más o menos convincentes que en ocasiones se expresaron, una premisa no dicha ni admitida explícitamente, en el sentido de que se consideraba inmoral jugar a la bolita parece que sirvió de soporte invisible a las decisiones judiciales que sostuvieron la prohibición estatutaria y las penalidades impuestas.

No cuestiono que para los años en que se aprobó esa legislación y en que se decidieron esos casos fuese válido el mencionado ejercicio del poder de policía. En un plano teórico podría discutirse si el Estado debe legislar la moral pero no lo creo necesario hacerlo aquí porque me estoy dirigiendo al problema concreto de la Ley de la Bolita en estos días. [3] Ante la situación actual, que más adelante precisamos, surge otro principio, también de rango constitucional, que ya no

pretations of Legal History (1923), pág. 1; Friedmann, Legal Theory, 5ta. ed. (1967), pág. 86; 4ta. ed. (1960), pág. 32; Paton, Jurisprudence, 2da. ed. (1951), pág. 169; Buena Vista Dairy v. J.R.T., 94 D.P.R. 624 (1967).

[2] Sobre este tema tiene interesantes atisbos Toffler en su Future Shock (1970).

[3] Sobre el debate contemporáneo sobre si el Estado debe o no legislar la moral, puede verse Hart, Law, Liberty and Morality (1963); Lord Devlin, The Enforcement of Morals (1965); Wolfenden Committee Report (1957); Friedmann, Legal Theory, 5ta. ed. (1967), pág. 45.

puede ignorarse. Me refiero al de la igual protección de las leyes. En Puerto Rico hoy día es legal jugar en los casinos de los hoteles de turismo, en la Lotería de Puerto Rico, en la Lotería Municipal, en innumerables loterías o *bingos*, autorizados por ley, en las peleas de gallos y en las "picas" de las fiestas patronales celebradas anualmente en los 78 municipios de la isla.

Todos esos juegos se han ido permitiendo legislativamente y no hay duda de que ello ha causado una gran erosión, sino total destrucción, de la vieja creencia de que era inmoral jugar a los juegos de azar, hasta el extremo que lo que antes era la regla general—la prohibición—hoy día es la excepción y, a la inversa, lo que antes era la excepción se ha vuelto prácticamente la regla. [4]

En cuanto a la igual protección de las leyes, es harto sabido que la ley puede hacer clasificaciones pero éstas deben obedecer a criterios racionales y razonables. La Constitución no tolera clasificaciones arbitrarias.

Estimamos que resulta arbitrario, por no existir criterio racional ni razonable que lo justifique, que se pueda encarcelar hoy día en Puerto Rico a una persona por jugar unos centavos a la bolita y que se pueda confiscar la propiedad utilizada en dicho juego, mientras que se permite que se juegue durante todo el año a los muchos juegos de azar que hemos antes mencionado. Por ser irrazonable y arbitraria esa distinción entre el juego de la bolita y los otros mencionados juegos de azar permitidos, estimo que resulta inconstitucional la Ley de la Bolita, Ley Núm. 220 de 15 de mayo de 1948, según enmendada, 33 L.P.R.A. sec. 1247 y ss. porque viola la garantía de la igual protección de las leyes contenida en la Sec. 7 del Art. II de la Constitución de Puerto Rico.

Esta solución que proponemos tendría, por lo menos, cinco resultados que creemos deseables: (1) el de hacer más justo,

---

[4] Véase 15 L.P.R.A. secs. 71 y ss.; 111 y ss.; 601 y ss.; 151 y ss.; 181 y ss.; 292 y ss. y 80 y ss.

más consistente y más sincero nuestro ordenamiento jurídico penal; (2) el que el Gobierno podría cobrar licencias, derechos y contribución sobre ingresos a los operadores de las bancas de bolita; (3) el de abolir, o reducir a términos insignificantes, el bajo mundo que opera esa industria; (4) economizarle al erario público la considerable suma que se gasta en perseguir dicho juego (policías, fiscales, jueces, testigos, confidentes, etc.) y (5) cesar la práctica, a la larga corruptora, de mantener confidentes bajo paga operando en esa actividad. Puede añadirse que también ganaría la dignidad de la ley en Puerto Rico y la de los procedimientos judiciales, pues el hecho de que exista una ley que se viola con tanta frecuencia y tantas veces impunemente hace desmerecer a los ojos del ciudadano común la dignidad de la ley y la de su administración.