EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* GUILLERMO TROCHE MERCADO, acusado y apelante.

*Número:* CR-76-98      *Resuelto:* 30 de diciembre de 1976

*Yamil Galib Frangie,* abogado del apelante; *Roberto Armstrong, Jr., Procurador General Interino, Justo Gorbea Varona, Subprocurador General Interino,* y *Miguel A. Santana Bagur, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El apelante fue condenado a pagar dos multas de $350 cada una por haber vendido a un agente encubierto varias papeletas de "Bolita", en violación de la Sec.

4 de la Ley Núm. 220 de 15 de mayo de 1948 (33 L.P.R.A. sec. 1250).

Señala que las sentencias son contrarias a derecho y a la prueba y que la citada Ley Núm. 220 es inconstitucional.

■ El primer señalamiento consiste en una impugnación de la apreciación de la prueba que hizo el tribunal de instancia. Examinado el caso, no encontramos razones para desechar las conclusiones de hecho de dicho Tribunal. La prueba de cargo, creída como lo fue, justifica a plenitud la confirmación de la sentencia. *Pueblo* v. *De León Claudio*, 99 D.P.R. 266, 271 (1970).

■ Sobre el planteamiento relacionado con la constitucionalidad de la Ley Núm. 220, el apelante no nos ha demostrado ni convencido que la Asamblea Legisaltiva carezca de facultad constitucional para legislar sobre esta materia, [1] no ya en virtud de conceptos de moralidad, sino en consideración a otros fines públicos de valía, entre los cuales se destaca la reglamentación de todos los juegos de azar, con miras a proteger que los mismos no caigan en manos inescrupulosas y se anule su utilidad social como fuentes de ingresos gubernamental.

Según expresamos en *Pueblo* v. *Tribunal Superior*, 91 D.P.R. 19, 41–42, citando a *Pueblo* v. *Luciano Arroyo*, 83 D.P.R. 573, 585–586 (1961), ". . . el juego ilegal de la bolita causa graves males sociales en Puerto Rico. Por su conducto se escurren grandes sumas de dinero que pertenecen en su casi totalidad a los grupos económicamente débiles; ha facilitado la creación y consolidación de organizaciones criminales profesionales que de esa actividad saltan a otras socialmente más peligrosas, y que constituyen un elemento erosivo en el cuerpo social y aun para la propia fuerza pública. *Cf. Pueblo* v. *Adorno*, 81 D.P.R. 518 (1959)."

---

[1] En *Serra* v. *Salesian Society*, 84 D.P.R. 322 (1961), resolvimos que la ley no concede acción para reclamar lo que se gana en un juego prohibido.

Recientemente reafirmamos dicho enfoque al estimar que esta legislación fue aprobada:

"... con el fin de poner fin a un mal que permite a personas que viven al margen de la ley explotar inmisericordiosamente al público de escasos recursos económicos y exprimir cuantiosos beneficios monetarios de las familias más necesitadas en nuestra comunidad, abusando de su buena fe y de sus ansias de mejoramiento económico." *Pueblo* v. *Figueroa Pérez,* 96 D.P.R. 6, 9 (1968).

Independientemente de los criterios respetables que puedan existir respecto a si la tradicional persecución de la bolita representa al Estado mayores perjuicios que ventajas, y de si su prohibición logra a cabalidad los fines que le animan, corresponde al Poder Legislativo, con inventiva y visión, determinar el curso de acción a seguirse frente a otras alternativas propuestas.

*La sentencia será confirmada.*

El Juez Asociado Señor Rigau disintió en opinión separada.

—O—

Opinión disidente del Juez Asociado Señor Rigau.

San Juan, Puerto Rico, a 30 de diciembre de 1976

El apelante fue convicto de vender "bolita" y de poseer material que podía usarse en dicho juego, en violación de la Sec. 4 de la Ley Núm. 220 de 15 de mayo de 1948 (33 L.P.R.A. sec. 1250), conocida como la Ley de la Bolita.

En apelación hace dos señalamientos de error. En el primero impugna la suficiencia de la prueba y en el segundo plantea la inconstitucionalidad del estatuto por no cumplir éste con el requisito constitucional de la igual protección de las leyes. Dicho requisito o protección constitucional está garantizado en Puerto Rico por la Sec. 7 del Art. II de nuestra Constitución y por la Enmienda 14 de la Constitución federal.

Como se sabe, en cuanto a la igual protección de las leyes, la ley puede hacer clasificaciones pero éstas deben obedecer a criterios racionales y razonables. Las clasificaciones que se hagan deben estar razonablemente relacionadas con el propósito del estatuto; dicho propósito debe estar comprendido dentro de los límites constitucionales de las facultades legislativas; y las clasificaciones deben estar basadas en distinciones razonables. *Miranda* v. *Sec. de Hacienda*, 77 D.P.R. 171 (1954). Estos son principios de larga y sólida vigencia. Existen en el derecho norteamericano desde mucho antes de aprobarse la Enmienda 14.[1] Su expresión clásica aparece en *Barbier* v. *Connolly*, 113 U.S. 27, 32 (1885), ya, desde luego, con posterioridad a la aprobación de dicha enmienda en 1868.[2] Repugnan al texto constitucional las clasificaciones irrazonables y arbitrarias. *Frost* v. *Corporation Commission*, 278 U.S. 515, 522 (1929); *Smith* v. *Cahoon*, 283 U.S. 553, 556–567 (1931). El derecho histórico establecido con relación a las garantías que comprende nuestra Carta de Derechos ha quedado incorporado o puede ser incorporado por nosotros a nuestro derecho constitucional, *Aponte Martínez* v. *Lugo*, 100 D.P.R. 282, 290 (1971), y como hemos indicado antes, podemos, cuando sea justo y conveniente, ampliar el ámbito de las garantías constitucionales contenidas en nuestra Carta de Derechos, sin sentirnos limitados por los confines que a garantías equivalentes les fije el derecho constitucional de los Estados Unidos. *R.C.A.* v. *Gobierno de la Capital*, 91 D.P.R. 416, 427 (1964); *Aponte Martínez* v. *Lugo*, supra, pág. 286 *in fine*.

Que el derecho no es estático pero que a la vez tiene que ofrecer garantía de estabilidad y de seguridad, es una de las paradojas con que se han confrontado jueces y juristas por

---

[1] Véanse, por ejemplo, *Holden* v. *James*, 11 Mass. 396 (1814) y *Vanzant* v. *Waddel*, 2 Yerger 260 (Tenn. 1829).

[2] Para expresiones contemporáneas, aunque en otro contexto, véase *Zachry International* v. *Tribunal Superior*, 104 D.P.R. 267 (1975).

siglos. (³) El caso de autos es uno en el cual nos topamos con esa disyuntiva.

En el pasado sostuvimos la Ley de la Bolita a base del principio, de rango constitucional, de que el poder de policía del estado autorizaba a éste a prohibir la práctica de dicho juego de azar y en consecuencia lo autorizaba a recluir en la cárcel a los que interviniesen en el mismo y a confiscar la propiedad utilizada en relación con ese juego. La razón de por qué eso debía ser así nunca afloró muy claramente ni en la ley ni en los casos. Independientemente de las racionalizaciones más o menos convincentes que en ocasiones se expresaron, una premisa no dicha ni admitida explícitamente, en el sentido de que se consideraba inmoral jugar a la bolita parece que sirvió de soporte invisible a las decisiones judiciales que sostuvieron la prohibición estatutaria y las penalidades impuestas.

No cuestionamos que para los años en que se aprobó esa legislación y en que se decidieron esos casos fuese válido el mencionado ejercicio del poder de policía. En un plano teórico podría discutirse si el estado debe legislar la moral pero no creemos necesario hacerlo aquí porque nos vamos a dirigir al problema concreto de la Ley de la Bolita en nuestros días. (⁴) Ante la situación actual, que más adelante precisamos, surge otro principio, también de rango constitucional, que no puede ignorarse. Nos referimos al de la igual protección de las leyes.

---

(³) Castán, *Teoría de la Aplicación e Investigación del Derecho*, pág. 356 (1947) ; Pound, *Law Finding Through Experience and Reason*, pág. 23 (1960) ; Allen, *Law in the Making*, 7a. ed. (1964), pág. 346; Pound, *Interpretations of Legal History*, pág. 1 (1923) ; Friedmann, *Legal Theory*, 5ta. ed. (1967), pág. 86; 4ta. ed. (1960), pág. 32; Paton, *Jurisprudence*, 2da. ed. (1951), pág. 169; *Buena Vista Dairy* v. *J.R.T.*, 94 D.P.R. 632 (1967).

(⁴) Sobre el debate contemporáneo sobre si el estado debe o no legislar la moral, puede verse Hart, *Law, Liberty and Morality* (1963) ; Lord Devlin, *The Enforcement of Morals* (1965) ; Wolfenden Committee Report (1957) ; Friedmann, *Legal Theory*, 5ta. ed. (1967), pág. 45; MacIver, *The Modern State*, pág. 149 y ss. (ed. 1964).

En Puerto Rico hoy día es legal jugar en los casinos de los hoteles de turismo, (⁵) en la Lotería de Puerto Rico, (⁶) en la Lotería Municipal, (⁷) en innumerables loterías o "bingos", autorizados por ley, (⁸) a los caballos, (⁹) en las peleas de gallos (¹⁰) y en las "picas" de las fiestas patronales celebradas anualmente en los 78 municipios de la isla. (¹¹) Todos esos juegos se han ido permitiendo y ello ha causado una gran erosión, sino total destrucción, de la vieja creencia puritana de que era inmoral jugar a los juegos de azar, (¹²) hasta el extremo que lo que antes era la regla general—la prohibición—hoy día es la excepción.

Resulta arbitrario, por no existir criterio racional ni razonable que lo justifique, que se pueda encarcelar hoy día en Puerto Rico a una persona por jugar unos centavos a la bolita y que se pueda confiscar la propiedad utilizada en dicho juego, mientras que se permite que se juegue durante todo el año a los muchos juegos de azar que hemos antes mencionado. Por ser irrazonable y arbitraria esa distinción entre el juego de la bolita y los otros mencionados juegos de azar permitidos, es inconstitucional la Ley de la Bolita, Ley Núm. 220 de 15 de mayo de 1948, según enmendada, 33 L.P.R.A. sec. 1247 y ss., porque viola la garantía de la igual protección de las leyes.

Yo revocaría la sentencia dictada en este caso. (¹³)

---

(⁵) 15 L.P.R.A. sec. 71 y ss.

(⁶) 15 L.P.R.A. sec. 111 y ss.

(⁷) 15 L.P.R.A. sec. 601 y ss.

(⁸) 15 L.P.R.A. sec. 151 y ss.

(⁹) 15 L.P.R.A. sec. 181 y ss.

(¹⁰) 15 L.P.R.A. sec. 292 y ss.

(¹¹) 15 L.P.R.A. sec. 80.

(¹²) MacIver, *The Modern State,* pág. 158 (ed. 1964).

(¹³) Aunque sobre este asunto me había expresado anteriormente en *Sánchez Reyes* v. *Srio. de Justicia,* 104 D.P.R. 582 (1976), me pareció conveniente ampliar mis puntos de vista sobre el particular.