Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| DEPARTAMENTO DE HACIENDA Y OTROS<br><br>Apelados<br><br>v.<br><br>DON RIFA, LLC<br><br>Apelante | KLAN202300334 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2021CV02368<br><br>Sobre: *Injunction* (Entredicho Provisional) *Injunction* Preliminar y Permanente |
|---|---|---|

Panel integrado por su presidenta, la juez Domínguez Irizarry, la juez Rivera Marchand y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 18 de septiembre de 2024.

Comparece la parte apelante, Don Rifa, LLC y nos solicita que revoquemos la *Sentencia* emitida y notificada por el Tribunal de Primera Instancia, Sala Superior de San Juan, el 20 de enero de 2023. Mediante dicho dictamen, el foro primario declaró Ha Lugar la acción incoada por la parte apelada, el Departamento de Hacienda del Estado Libre Asociado de Puerto Rico. En consecuencia, expidió el auto de *injunction* y ordenó a la parte apelante a que, de inmediato, cesara y desistiera de continuar operando la aplicación móvil conocida como Don Rifa.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado.

### I

El 19 de abril de 2021, el Departamento de Hacienda del Estado Libre Asociado de Puerto Rico (Departamento de Hacienda o apelado) incoó una *Demanda* en contra de Don Rifa, LLC (Don Rifa

o apelante) sobre *injunction* preliminar y sentencia declaratoria.[1] En síntesis, el Departamento de Hacienda alegó que, en el año 2020, el Departamento de Asuntos al Consumidor (DACO) recibió una consulta por parte de Don Rifa sobre un problema que tuvo este último con la compañía *Apple*, pues esta le solicitó una licencia para los fines de rifar mediante la compra de entradas a base de donaciones. Por su parte, el DACO le solicitó a Don Rifa más información sobre el asunto y le exhortó a que revisara el Reglamento sobre sorteos del organismo, y se cerciorara que la aplicación que deseaba implementar cumplía con lo ahí dispuesto. De igual forma, le requirió una explicación de cómo funcionaría la aplicación, cuáles eran las reglas para la participación y cómo se estarían manejando los sorteos y entrega de premios. Sin embargo, sostuvo que Don Rifa no respondió ni envió la documentación solicitada. Por otro lado, indicó que el 3 de abril de 2020, se publicó un reportaje sobre Don Rifa en donde se anunció el lanzamiento de su aplicación y se explicó que:

> [...]esta nueva plataforma de sorteo digital dará la opción a los usuarios de participar cuantas veces deseen para tener la oportunidad de ganarse grandes premios que van desde residencias, vehículos, botes, entre otros. Además, expresó su interés de colaborar con entidades sin fines de lucro, empresas o individuos que necesiten medios alternos de recaudación de fondos[.]

> Asimismo, expresó que, para participar, los usuarios deberán descargar en sus celulares y registra[r]se en la aplicación, una vez acceden a la misma deben elegir la experiencia en la que desean participar y la cantidad de entradas que le gustaría tener en el sorteo. Cuando haya realizado su pago se le enviará un correo electrónico con las entradas en dicho sorteo y se le colocará interactivamente en el perfil de usuario. Los usuarios podrán optar por una participación gratuita en cada experiencia según los términos de uso[.]

---

[1] Anejo I del recurso, págs. 1-19. Junto a esta demanda, la parte apelante presentó copia de los siguientes documentos: (1) *Declaración Jurada* suscrita por Lorna M. Huertas Padilla el 1 de febrero de 2021; (2) *Certificado de Organización* de Don Rifa, LLC, con fecha del 4 de octubre de 2019; (3) *Certificate of Formation of a Limited Liability Company* de Don Rifa, LLC, con fecha del 4 de octubre de 2019; (4) *U.S. Postal Service Certified Mail Receipt,* con fecha del 30 de octubre de 2020. Véase, Anejo I del recurso, págs. 20-25.

Así las cosas, el DACO refirió el asunto al Departamento de Hacienda y, el 28 de octubre de 2020, este último le cursó a Don Rifa una comunicación advirtiéndole que la operación de su compañía constituía una modalidad de lotería clandestina y le requirió un cese y desista sobre dicha práctica. Debido a lo anterior, solicitó al Tribunal de Primera Instancia que declarara la práctica de Don Rifa como lotería ilegal y que expidiera el recurso de *injunction* preliminar contra Don Rifa para que cesara de operar su plataforma.

Por su parte, el 23 de abril de 2021, Don Rifa instó una *Moción de Desestimación*.[2] En esencia, arguyó que procedía que se desestimara la acción presentada en su contra, pues razonó que el Departamento de Hacienda dejó de exponer una reclamación que ameritara la concesión de un remedio. Por otro lado, alegó que el foro primario carecía de jurisdicción primaria para atender el asunto en controversia y que el Departamento de Hacienda no agotó los remedios administrativos disponibles ante el DACO. Argumentó que el foro de instancia carecía de jurisdicción primaria sobre la controversia, toda vez que el caso se encontraba en conversaciones transaccionales ante el DACO. Planteó que, en vista de ello, el único remedio que tenía disponible el Departamento de Hacienda era someterse como parte interventora en el trámite administrativo o esperar a que el organismo emitiera una determinación final para

---

[2] Anejo II del recurso, págs. 26-43. Junto a esta moción, la parte apelante presentó copia de los siguientes documentos: (1)Capturas de pantalla de Don Rifa; (2) Correos electrónicos sobre "Consulta para nueva app móvil Don Rifa", con fecha del 12 de agosto de 2020; (3) Correos electrónicos sobre "RE:Consulta para nueva app móvil Don Rifa", con fecha del 20 de febrero de 2020; (4) Artículo titulado "DACO alerta sobre prácticas engañosas de Don Rifa"; (5) Artículo titulado "DACO anuncia posible multa a aplicación de sorteos", con fecha del 12 de agosto de 2020; (6) Artículo titulado "Don Rifa en la mira de DACO por supuestas prácticas engañosas", con fecha del 12 de agosto de 2020; (7) Artículo titulado "En la mira del DACO empresa de rifas por prácticas engañosas"; (8) Capturas de pantalla de la página "La Fortaleza de PR" en la red social Facebook; (9) Correo electrónico sobre "Contestación a Solicitud de Cese y Desista de Juego ¨Don Rifa¨", con fecha del 21 de diciembre de 2020; (10) RE: Contestación a "Solicitud de cese y desista de juego Don Rifa", con fecha del 21 de diciembre de 2020; (11) Solicitud de cese y desista de juego "Don Rifa" por el Departamento de Hacienda, con fecha del 28 de octubre de 2020. Véase, Apéndice II del recurso, págs. 44-73.

recurrir ante el Tribunal de Apelaciones mediante el recurso de revisión judicial. De igual forma, alegó que el Departamento de Hacienda no cumplía con los requisitos para requerir un *injunction* preliminar, pues tenía pocas probabilidades de prevalecer en su reclamación porque el modelo de negocio de Don Rifa cumplía con la definición de **sorteo** conforme a lo dispuesto en el Capítulo VIII del Reglamento Núm. 9158 del DACO. Esto es así, pues Don Rifa arguyó que proveía una forma alterna de participar en los sorteos sin pagar alguna prestación, lo que eliminaba el elemento de prestación contenido en la jurisprudencia.

En respuesta, el 29 de abril de 2021, el Departamento de Hacienda presentó su *Oposición a Desestimación.*[3] En síntesis, alegó que Don Rifa no pudo negar ni refutar los hechos bien alegados por este y que no existía otro medio adecuado que recurrir al Tribunal de Primera Instancia para solicitar una orden de cese y desista. Además, argumentó que el DACO no poseía jurisdicción sobre los asuntos referente a la lotería, pues la política pública concerniente a los juegos de azar, la dirección y la administración de la lotería le corresponde al Departamento de Hacienda.

Luego de varios trámites procesales,[4] el 11 de diciembre de 2022, Don Rifa presentó su *Contestación a Demanda.*[5] En síntesis, aceptó y negó algunos hechos esbozados por el Departamento de Hacienda. De igual forma, levantó de manera afirmativa que existía

---

[3] Anejo III del recurso, págs. 74-84.
[4] Cabe señalar que, el 9 de junio de 2021, el Tribunal de Primera Instancia emitió una *Sentencia* mediante la cual desestimó la acción presentada por el Departamento de Hacienda, por el fundamento de que el Artículo 14 de la Ley Núm. 465 de 15 de mayo de 1947, según enmendada, conocida como la *Ley para crear la "Lotería de Puerto Rico"*, 15 LPRA sec. 111 *et seq.*, tipificaba la lotería clandestina, por lo que el remedio adecuado en ley era realizar el procedimiento criminal. Inconforme con dicha determinación, el Departamento de Hacienda acudió al Tribunal de Apelaciones mediante un recurso de apelación de nomenclatura KLAN202100605. Evaluado el recurso, un panel hermano emitió una *Sentencia,* mediante la cual revocó el dictamen emitido por el foro primario y devolvió el caso al referido foro para que continuaran los procedimientos, bajo el razonamiento de que la posible imposición de una sanción penal no sustituía lo que se perseguía a través del *injunction*; es decir, evitar que la conducta persista en el presente y el futuro.
[5] Anejo XV del recurso, págs. 788-809.

un remedio adjudicativo adecuado en ley bajo el *Reglamento para Establecer un Procedimiento Uniforme de Adjudicación para los Asuntos bajo la Jurisdicción del Departamento de Hacienda que Deban ser Objeto de Adjudicación Formal*, Reglamento Núm. 7389, que el Departamento de Hacienda no había realizado.

Celebrada una vista en su fondo y evaluadas las posturas de las partes, el 20 de enero de 2023, el Tribunal de Primera Instancia emitió y notificó la *Sentencia* que nos ocupa.[6] Mediante dicho dictamen, el foro primario declaró Ha Lugar la acción de epígrafe. En consecuencia, expidió el auto de *injunction* solicitado y ordenó a Don Rifa a que, de inmediato, cesara y desistiera de continuar operando la aplicación móvil conocida como Don Rifa. En particular, el foro *a quo* desglosó las siguientes determinaciones de hechos:

1. El Sr. Armando Pérez Cruz es [g]erente de [p]roductos de la Lotería de Puerto Rico desde el 2016.
2. En el año 2020, el Departamento de Hacienda le notificó a Don Rifa el cese y desista de continuar operando la aplicación por no tener autorización para hacerlo.
3. Don Rifa, a pesar de haber sido apercibido por el Gobierno de que estaba llevando a cabo una acción ilegal, decidió continuar con la alegada lotería clandestina.
4. Don Rifa, LLC fue fundada por el Sr. Efraín Orengo Cedeño en el año 2019 como una plataforma digital de lotería o juego de azar.
5. Don Rifa vende participaciones para las rifas individuales[,] a pesar de que también se pueden adquirir participaciones de forma gratuita.
6. Estos otorgan un premio que puede ser desde un carro, un bote y premios de dinero.
7. El premio se adquiere completamente al azar.
8. Don Rifa cumple con los requisitos para ser catalogado como lotería o juego de azar prohibido.
9. La prueba presentada por el Departamento de Hacienda configurara *[sic]* un daño de patente intensidad que reclama urgente reparación.[7]

El foro de origen realizó un análisis conforme a los requisitos esbozados en *Boys and Girls Club v. Srio. de Hacienda*, 179 DPR 746, 759 (2007); en particular: (i) el premio que constituye algo de

---

[6] Anejo XVII del recurso, págs. 812-819.
[7] Íd., págs. 813-814.

valor pecuniario que la persona recibe directamente u obtiene el derecho de recibir, (ii) el azar o suerte por medio del cual se gana el premio y (iii) el pago o prestación ("consideración") que se hace o se promete para tener derecho a participar en la rifa o lotería. Respecto a esto, razonó que:

> [...]En cuanto al primer requisito, no cabe duda de que existe un premio que se entrega. De la prueba presentada por los testimonios y demostrada mediante la página web, surge que hay multiplicidad de premios que pueden ser botes, carros y premios en metálico. En cuanto al segundo elemento, surgió de ambos testimonios que los ganadores se escogen totalmente al azar. Por lo tanto, no existe duda o controversia sobre ese punto. Finalmente, la controversia mayor se circunscribe al tercer elemento, el pago o prestación necesaria para tener derecho a participar en la rifa o lotería. Según el testimonio del Sr. Efraín Orengo Cedeño, el fundador de Don Rifa, la aplicación funciona de la siguiente manera[:] personas pueden participar de manera gratuita en cada lotería, pero se debe cumplir con una cuota de entradas que se pagan por personas que desean participar, para que, al final, ocurra la supuesta rifa. O sea, en la mayoría de las "rifas" hace falta una prestación para que estas se lleven a cabo.
>
> Aunque Don Rifa arguye que se han llevado a cabo "rifas" que tienen cuotas de mínimo de entradas pagadas, la realidad es que[,] en **el momento en que una persona de todas las participantes adquiere una entrada a la rifa, esta se convierte en una lotería clandestina, la cual es una actividad ilegal, según establecido por la ley. El mero hecho de que las personas puedan participar de manera gratuita no le quita la naturaleza ilegal, puesto que, con una sola entrada pagada, se violenta la ley**. (Énfasis suplido).

En desacuerdo, el 6 de febrero de 2023, Don Rifa presentó una *Moción de Enmiendas o Determinaciones Adicionales de Hechos y Conclusiones de Derecho; Reconsideración[;] Enmienda Nunc Pro Tunc de la Sentencia*.[8] Por su parte, el 13 de febrero de 2023, el Departamento de Hacienda se opuso.[9] Atendidas las posturas de las partes, el 14 de febrero de 2023, el foro primario declaró No Ha Lugar la moción presentada por Don Rifa.[10].

---

[8] Anejo XVIII del recurso, págs. 820-845.
[9] Anejo XIX del recurso, págs. 846-854.
[10] Anejo XX del recurso, pág. 855.

Inconforme, el 17 de abril de 2023, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló los siguientes errores:

> ERRÓ EL TPI AL ABUSAR DE SU DISCRECI[Ó]N Y NEGARSE A ACOGER LAS ENMIENDAS O DETERMINACIONES ADICIONALES DE HECHOS PROPUEST[A]S POR DON RIFA[,] TOMANDO EN CONSIDERACIÓN EL DESFILE DE LA PRUEBA TESTIFICAL QUE NO FUE REFUTADA O IMPUGNADA POR HACIENDA.
>
> ERR[Ó] EL TPI AL EXPEDIR EL AUTO DE INJUNCTION A FAVOR DE HACIENDA[,] A PESAR DE QUE EXIST[Í]A UN REMEDIO ADECUADO EN LEY QUE NO FUE AGOTADO POR HACIENDA Y AL ESTE [Ú]LTIMO NO HABER ESTABLECIDO O PROBADO DAÑO IRREPARABLE.
>
> ERR[Ó] EL TPI AL CONCLUIR QUE LOS SORTEOS LLEVADOS A CABO POR DON RIFA EN SU PLATAFORMA DIGITAL CONSTITUYEN UNA LOTER[Í]A CLANDESTINA.
>
> ERR[Ó] EL TPI AL ABUSAR DE SU DISCRECI[Ó]N Y NEGARSE A ACOGER LA SOLICITUD DE ENMIENDA NUNC PRO TUNC DE LA SENTENCIA[,] A LOS FINES DE DISPONER QUE LA ORDEN DE CESE Y DESISTA SOLO PUEDE SER DIRIGIDA A LA CELEBRACIÓN DE AQUELLOS SORTEOS EN LA PLATAFORMA DE DON RIFA DONDE SE REQUIERA QUE LOS PARTICIPANTES PAGUEN UNA PRESTACIÓN O SE OFREZCAN PARTICIPACIONES ADICIONALES A CAMBIO DEL PAGO DE UNA PRESTACIÓN Y NO A LA OPERACIÓN DE LA APLICACIÓN MÓVIL PARA SORTEOS GRATUITOS O CUALQUIER OTRA ACTIVIDAD PERMITIDA POR LEY.

Luego de varias incidencias procesales, en cumplimiento con nuestra *Resolución* del 28 de septiembre de 2023, y luego de una prórroga, la parte apelante presentó su *Alegato Suplementario* el 8 de noviembre del mismo año. Posteriormente, la parte apelada compareció mediante *Alegato en Oposición del Estado* el 29 de diciembre de 2023.

Con el beneficio de la comparecencia de las partes, así como la transcripción de la prueba oral, procedemos a resolver.

## II

## A

El recurso de *injunction* es aquel mandamiento judicial mediante el cual se le requiere a una persona abstenerse de realizar, o de permitir que se realice determinada cosa o acción que infringe o perjudica el derecho de otra persona, en los casos en donde no hay otro remedio adecuado en ley. Artículo 675 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, según enmendado, 32 LPRA sec. 3521; *VDE Corporation v. F & R Contractors*, 180 DPR 21, 40 (2010). En nuestro ordenamiento jurídico el recurso extraordinario de *injunction* está regido por la Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, y los Artículos 675 al 695 de Código de Enjuiciamiento Civil de Puerto Rico de 1933, 32 LPRA secs. 3521 - 3566.

El Tribunal Supremo de Puerto Rico ha expresado que, para determinar si procede o no la concesión del remedio que brinda el recurso extraordinario de *injunction,* se debe:

> detectar si la acción [que lleva a cabo la parte contra quien se intenta conseguir el remedio] connota o no un agravio de patente intensidad al derecho del individuo que reclame una reparación urgente. [...] Constituye, por lo tanto, un daño irreparable aquel que no puede ser satisfecho adecuadamente mediante la utilización de los remedios legales disponibles. [...] De ahí que la parte promovente deberá demostrar que de [e]ste no concederse, sufriría un daño irreparable. *VDE Corporation v. F & R Contractors,* supra; *Gracia Ortiz v. Policía de P.R.*, 140 DPR 247 (1996); *Misión Ind. P.R. v. J.P. y A.A.A.*, 142 DPR 656, 682 (1997); *Pérez Vda. Muñiz v. Criado*, 151 DPR 355, 373 (2000).

Cónsono con lo anterior, la Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 57.3, establece aquellos criterios a considerar para expedir un *injunction* preliminar, entre ellos se encuentran:

> (a) la naturaleza del daño a que está expuesto la parte peticionaria;
> (b) la irreparabilidad del daño o la inexistencia de un remedio adecuado en ley;
> (c) la probabilidad de que la parte promovente prevalezca;

(d) la probabilidad de que la causa se torne en académica;

(e) el impacto sobre el interés público del remedio que se solicita, y

(f) la diligencia y la buena fe con que ha obrado la parte peticionari[a].

Ahora bien, la concesión de un *injunction* preliminar descansa en el ejercicio de la discreción judicial, la cual se despliega luego de sopesar aquellas necesidades e intereses de ambas partes involucradas en la referida controversia. *Misión Ind. P.R. v. J.P. y A.A.A.*, supra, pág. 680. Al ser una decisión de carácter discrecional, solo podrá ser revocada en apelación si se demuestra que el foro primario abusó de su facultad discrecional. *VDE Corporation v. F & R Contractors,* supra, pág. 41.

**B**

Conforme el Artículo 1 del Plan de Reorganización Núm. 3 del 22 de junio de 1994, según enmendado, Plan de Reorganización del Departamento de Hacienda (Plan de Reorganización Núm. 3-1994), 3 LPRA Ap. VII, sec. I nota, el Departamento de Hacienda ha tenido la responsabilidad, entre otras cosas, de crear la Lotería Tradicional, establecer la Lotería Electrónica y la implantación de la política pública sobre los juegos de azar. Como parte de sus funciones generales, el Departamento de Hacienda está encargado de "implantar, desarrollar, supervisar y coordinar la política pública, los organismos y programas dirigidos a los juegos de azar y las instituciones financieras". Artículo 2 del Plan de Reorganización Núm. 3-1994, 3 LPRA Ap. VII, sec. I.

Cónsono con lo anterior, la Ley Núm. 465 del 15 de mayo de 1947, según enmendada, *Ley para Crear la "Lotería de Puerto Rico"* (Ley Núm. 465-1947), 15 LPRA sec. 111 *et seq.*, creó el Negociado de la Lotería para la dirección y administración de la lotería en Puerto Rico. En específico, el Artículo 14 del referido estatuto, 15 LPRA sec.

124, dispone lo relacionado sobre las loterías clandestinas de la siguiente forma:

> [E]l establecimiento, conservación y explotación de loterías en Puerto Rico, excepto en la forma descrita las 111 a 127e de este título, queda prohibido en Puerto Rico. Toda persona que invente, prepare, establezca o juegue cualquier lotería clandestina en violación a las disposiciones de las 111 a 127e de este título, o venda, ceda, o en cualquier forma supla o traspase a otro o a un tercero, algún billete, suerte, acción o interés, o algún papel, certificado o instrumento que se presuma o entienda ser o represente algún billete, suerte o acción, o interés en cualquier lotería en violación a las disposiciones de las 111 a 127e de este título, o que dependiere del resultado de la misma, incurrirá en delito menos grave.

> Se exceptúan las rifas, sorteos y bingos realizados por aspirantes, candidatos, funcionarios electos, partidos políticos, sus respectivos comités y demás comités políticos cuyo propósito sea suplementar el financiamiento de sus campañas políticas de acuerdo con los términos de las 111 a 127e de este título y de las órdenes, resoluciones o guías que a su amparo se dicten.

Por su parte, el Artículo 19 de la Ley Núm. 465-1947, 15 LPRA sec. 127, establece que cualquier persona que infrinja las disposiciones de esta ley incurrirá en delito menos grave y será sancionada con una multa no menor de cien dólares ($100) y no mayor de quinientos dólares ($500) o con una pena de reclusión por un término no mayor de sesenta (60) días o ambas penas a discreción del tribunal.

Respecto a la modalidad electrónica, la Ley Núm. 10 del 24 de mayo de 1989, según enmendada, *Ley para Autorizar el Sistema de Lotería Adicional*, 15 LPRA sec. 801 *et seq.*, (Ley Núm. 10-1989), creó el sistema de lotería adicional y autorizó, además, el "...uso de un sistema de computadoras interactivo que permita el registro de las jugadas al momento en que las mismas se realizan". 15 LPRA sec. 802. En su Artículo 15, 15 LPRA sec. 814, se enumeran aquellas prácticas prohibidas y sus penalidades, de la siguiente manera:

> (a) Prohibiciones. — Se considerarán prácticas prohibidas relacionadas con el juego de la lotería autorizado por este capítulo, las siguientes:

(1) Vender u ofrecer para la venta un boleto de lotería a cualquier persona menor de dieciocho (18) años de edad.

(2) **Vender, anunciar y ofrecer para la venta boletos de lotería sin estar debidamente autorizado por una licencia vigente de vendedor de jugadas.**

(3) Vender u ofrecer para la venta un boleto o participación a un precio distinto al precio oficial establecido por reglamento.

(b) Penalidades. — Cualquier persona que incurra en cualesquiera de las prácticas antes enumeradas o que infrinja las disposiciones de este capítulo o de los reglamentos que se promulguen para su ejecución, incurrirá en delito menos grave. Si la persona convicta fuere un vendedor de jugadas, tal convicción conllevará la cancelación automática de la licencia expedida por el Director del Negociado. (Énfasis nuestro).

Nuestro ordenamiento jurídico ha esbozado los criterios que caracterizan un juego de azar ilegal. Respecto al mismo, el Tribunal Supremo de Puerto Rico ha tomado en consideración los siguientes criterios:

(1) el pago o prestación que se hace o se promete para participar en el juego de azar; (2) el azar o suerte por medio del cual se gana el premio y, por último, (3) el premio que constituye algo de valor pecuniario que la persona recibe directamente u obtiene el derecho a recibir. *Doble Seis Sport v. Depto. Hacienda*, 190 DPR 763, 780-781 (2014); *Boys and Girls Club v. Srio. de Hacienda*, 179 DPR 746, 759 (2007).

**C**

El *Reglamento para Establecer un Procedimiento Uniforme de Adjudicación para los Asuntos bajo la Jurisdicción del Departamento de Hacienda que deban ser Objeto de Adjudicación Formal*, Reglamento Núm. 7389 de 13 de julio de 2007 (derogado)[11] (Reglamento Núm. 7389), establece las normas para el proceso de adjudicación en el Departamento de Hacienda. En particular, desglosa las pautas sobre la adjudicación de aquellas controversias, querellas, peticiones o reclamaciones bajo el Código de Rentas Internas de Puerto Rico de 2011, Ley. Núm. 1 del 31 de enero de

---

[11] El Reglamento Núm. 7389 fue derogado por el Reglamento Núm. 9505 del 25 de septiembre de 2023, *Reglamento de Procedimiento Adjudicativo ante el Departamento de Hacienda*. No obstante, el cuerpo reglamentario vigente al momento de los hechos que nos ocupan es el Reglamento Núm. 7389.

2011, según enmendado, 13 LPRA sec. 30011 *et seq.*, o cualquier otra ley especial que cubra la materia, que no disponga expresamente el derecho de presentar demanda en el Tribunal de Primera Instancia para cuestionar cualquier determinación adversa del Secretario del Departamento de Hacienda mediante un juicio en sus méritos o juicio *de novo*. Artículo 3 del Reglamento Núm. 7389.

**D**

La moción para determinaciones de hechos y conclusiones de derecho adicionales es aquella que se presenta para que el tribunal que dictó sentencia, corrija mediante enmiendas, aquellas determinaciones de hecho o conclusiones derecho que se sustentan por la prueba presentada en el juicio. R. Hernández Colón, *Práctica Jurídica de Puerto Rio Derecho Procesal Civil*, 6ta ed. rev., Ed. LexisNexis, 2017, sec. 5001, pág. 466. En lo pertinente, la Regla 43.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 43.1, establece que:

> No será necesario solicitar que se consignen determinaciones de hechos a los efectos de una apelación, pero a moción de parte, presentada a más tardar quince (15) días después de haberse archivado en autos copia de la notificación de la sentencia, el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes, si es que [e]stas no se hubiesen hecho por ser innecesarias, de acuerdo con la Regla 42.2, o podrá enmendar o hacer determinaciones adicionales o podrá enmendar la sentencia en conformidad. Si una parte interesa presentar una moción de enmiendas o determinaciones iniciales o adicionales, reconsideración o de nuevo juicio, [e]stas deberán presentarse en un solo escrito y el tribunal resolverá de igual manera. En todo caso, la suficiencia de la prueba para sostener las determinaciones podrá ser suscitada posteriormente aunque la parte que formule la cuestión no las haya objetado en el tribunal inferior, no haya presentado una moción para enmendarlas, o no haya solicitado sentencia.
>
> La moción de enmiendas o determinaciones iniciales o adicionales se notificará a las demás partes en el pleito dentro de los quince (15) días establecidos por esta regla para presentarla ante el tribunal. El término para notificar será de cumplimiento estricto.

En ese sentido, la aludida moción debe exponer con suficiente particularidad y especificad aquellos hechos que estime probados, y

debe estar fundamentada en aquellas cuestiones sustanciales que estén relacionadas con las determinaciones de hecho pertinentes o conclusiones de derecho materiales. 32 LPRA Ap. V, R. 43.2. Sobre su efecto de interrupción, la Regla 43.2 de Procedimiento Civil, *supra*, dispone que:

> Presentada una moción por cualquier parte en el pleito para que el tribunal enmiende sus determinaciones o haga determinaciones iniciales o adicionales, quedará interrumpido el término para apelar, para todas las partes. Este término comenzará a transcurrir nuevamente tan pronto se notifique y archive en autos copia de la resolución declarando con lugar, o denegando la solicitud o dictando sentencia enmendada, según sea el caso.

**E**

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux*, 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para

adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

**F**

La moción para corregir errores de forma, inadvertencia u omisión, también conocida como *nunc pro tunc*, es aquel escrito mediante el cual se busca corregir aquellos errores de la naturaleza anteriormente mencionados en una sentencia, orden o en cualquier parte del expediente. R. Hernández Colón, *op. cit.*, pág. 464, sec. 4901. En lo pertinente, la Regla 49.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.1, establece que:

Los errores de forma en las sentencias, órdenes u otras partes del expediente y los que aparezcan en [e]stas por inadvertencia u omisión, podrán corregirse por el tribunal en cualquier tiempo, a su propia iniciativa, o a moción de cualquier parte, previa notificación, si [e]sta se ordena. Durante la tramitación de una apelación o un recurso de *certiorari*, podrán corregirse dichos errores antes de elevar el expediente al tribunal de apelación y, posteriormente, s[o]lo podrán corregirse con el permiso del tribunal de apelación.

Los errores que son susceptibles a corregirse al amparo de la precitada regla, son aquellos que no van a la sustancia del escrito, pues una enmienda *nunc pro tunc* que no sea de forma puede afectar los derechos sustantivos de las partes. J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., T. IV, pág. 1390. Sobre esto, nuestro Tribunal Supremo ha expresado que:

Este Tribunal ha reiterado que las enmiendas encaminadas a corregir este tipo de error son de naturaleza *nunc pro tunc*, es decir, que se retrotraen a la fecha de la sentencia o resolución original. Las enmiendas siempre deberán estar sostenidas por el expediente del tribunal y no podrán menoscabar los derechos ya adquiridos por cada litigante cuando ha transcurrido en exceso el término dispuesto para apelar o solicitar la revisión. Es decir, no procede una enmienda *nunc pro tunc* para corregir errores de derecho, porque se afectan los derechos sustantivos de las partes. El criterio rector es que la cuestión a ser enmendada no conlleve la alteración de un derecho sustantivo, sino la corrección de una mera inadvertencia. *Otero Vélez v. Schroder Muñoz*, 200 DPR 76, 91 (2018); *S.L.G. Coriano-Correa v. K-mart Corp.*, 154 DPR 523, 530 (2001).

El tratadista José Cuevas Segarra ha definido errores de forma como "...un error en cuanto a lo que se expresa en el documento de que se trata". Cuevas Segarra, *op. cit.*, pág.1391. Entre los errores de forma más comunes se encuentran "los errores mecanográficos, los errores de cómputos matemáticos en que no esté involucrada la discreción del tribunal sentenciador, los errores de nombres de personas o lugares, los errores de fechas y los errores de números o cifras", pero no incluyen aquellos errores de derecho o una controversia en la interpretación de la ley. *Íd.*

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

**III**

La parte apelante sostiene en su primer señalamiento de error que el Tribunal de Primera Instancia incidió al abusar de su discreción y negarse a acoger las enmiendas o determinaciones adicionales de hechos propuestas por esta, tomando en consideración el desfile de la prueba testifical que no fue refutada o impugnada por la parte apelada. Asimismo, como segundo señalamiento de error, plantea que el foro primario erró al expedir el auto de *injunction* a favor de la parte apelada, a pesar de que existía un remedio adecuado en ley que no fue agotado por el Departamento de Hacienda y al este último no haber establecido o probado un daño irreparable. En su tercer señalamiento de error, arguye que el foro *a quo* incidió al concluir que los sorteos llevados a cabo por esta en su plataforma digital constituyen una lotería clandestina. Como cuarto y último señalamiento de error, alega que el foro de origen erró al abusar de su discreción y negarse a acoger la solicitud de enmienda *nunc pro tunc* de la sentencia, a los fines de disponer que la orden de cese y desista solo puede ser dirigida a la celebración de aquellos sorteos en la plataforma de Don Rifa donde se requiera que las personas participantes paguen una prestación o se ofrezcan participaciones adicionales a cambio del pago de una prestación y no a la operación de la aplicación móvil para sorteos gratuitos o cualquier otra actividad permitida por ley. No le asiste la razón.

En nuestro ordenamiento jurídico, la moción solicitando determinaciones de hechos y conclusiones de derecho adicionales se presenta para que el foro sentenciador corrija, mediante enmiendas, aquellas determinaciones de hecho o conclusiones de derecho que se sustentan por la prueba presentada en el juicio. Por

otro lado, es norma reiterada que no se favorece la intervención de los foros apelativos para revisar, entre otras cosas, las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto.

En el caso ante nuestra consideración, la parte apelante presentó una *Moción de Enmiendas o Determinaciones Adicionales de Hechos y Conclusiones de Derecho; Reconsideración[;] Enmienda Nunc Pro Tunc de la Sentencia*, en la cual solicitó al foro primario que incluyera en la *Sentencia* las siguientes determinaciones de hecho:

1. El Sr. Pérez Cruz reconoció que nunca había trabajado con anterioridad en la investigación de una plataforma de sorteos como la de Don Rifa.

2. El Sr. Pérez Cruz admitió que[,] en todos los sorteos en los cuales había trabajado[,] no se ofrecía al menos una forma alterna de participar sin pagar una prestación. Es decir, todos los sorteos requerían un pago para participar.

3. El Sr. Pérez Cruz no pudo establecer el alegado impacto económico de la operación de Don Rifa a la lotería en general.

4. El Sr. Pérez Cruz admitió conocer lo dispuesto en la Regla 75(p) del Capítulo VIII del "Reglamento de Prácticas Comerciales" del Departamento de Asuntos del Consumidor ("DACO"), Reglamento Núm. 9158, el cual establece lo siguiente: "Regla 75 – Definiciones[.] Los términos usados en este capítulo complementan los incluidos en la Regla 5 de este Reglamento, y tendrán el significado que a continuación se expresa: [.] p. Sorteo - actividad mediante la cual se le ofrece a más de una persona la oportunidad o expectativa de que una o más, pero no todas ellas, recibirán uno o más premios, y donde el azar es el elemento predominante en la selección del ganador. Todo sorteo donde se requiera que los participantes paguen una prestación se considerará una lotería ilegal[,] a tenor con el Art. 15 de la Ley Núm. 10 de 24 de mayo de 1989, según enmendada, a menos que el promotor provea al menos una forma alterna de participar sin pagar dicha prestación".

5. El Sr. Efraín Orengo, [p]residente de Don Rifa, LLC, testificó que la carta de cese y desista enviada por el Departamento de Hacienda a Don Rifa fue contestada por los abogados de este que le representaban en aquel momento.

6. El Sr. Orengo testificó haber agotado el procedimiento administrativo en [el] DACO, luego de una querella presentada en contra de Don Rifa por haberse colocado el nombre de la agencia en la plataforma, donde se incluyó la discusión de su modelo de negocio, las "Reglas Generales" y los "Términos de Uso", y el cual [sic] culminó en un acuerdo transaccional luego de la aprobación de los documentos presentados.

7. El Sr. Orengo prestó testimonio [de] que las comunicaciones con el Departamento de Hacienda se vieron interrumpidas por el cierre inminente de las operaciones gubernamentales dada la emergencia de la pandemia mundial del coronavirus COVID-19. (Este Honorable Tribunal puede tomar conocimiento judicial que[,] el 12 de marzo de 2020, la entonces [g]obernadora de Puerto Rico, Hon. Wanda Vázquez Garced, decretó un estado de emergencia por la amenaza que representaba la pandemia del COVID-19, y el 15 de marzo de 2020[,] [e]sta emitió otra Orden Ejecutiva mediante la cual se decretó un cierre total y toque de queda aplicable a entes gubernamentales y privados, con limitadas exclusiones. No fue hasta el mes de julio de 2020, que el Gobierno de Puerto Rico comenzó su apertura gradual).

8. El Sr. Orengo testificó que Don Rifa también lleva a cabo sorteos en su plataforma para los cuales no se cobra participación alguna. Es decir, sorteos que se llevan a cabo completamente de forma gratuita y sin opción para el pago de participaciones adicionales.

9. El Sr. Orengo, con el uso de su tableta, mostró que las "Reglas Generales" de la plataforma Don Rifa se encuentran en el siguiente portal: https://donrifa.com/pages/reglas. Allí se pueden encontrar la duración, elegibilidad, detalles específicos, premios, participación, selección de ganadores, notificación, entrega, publicidad, límite de responsabilidad, relevo, cancelaciones, preguntas y reclamaciones, lista de ganadores, ley aplicable, reglas generales y declaración; y los "Términos de Uso" se pueden acceder a través del portal https://donrifa.com/pages/terminos-de-uso.

10. El Departamento de Hacienda nunca radicó [una] querella en contra de Don Rifa haciendo uso del "Reglamento para Establecer un Procedimiento Uniforme de Adjudicación para los Asuntos bajo la Jurisdicción del Departamento de Hacienda que deban ser Objeto de Adjudicación Formal", Reglamento Núm. 7389 ("Reglamento Uniforme de Adjudicación").

Luego de revisar el expediente judicial, los escritos presentados por las partes y la transcripción de la prueba oral, llegamos a la conclusión de que no se cometió el primer señalamiento de error. Nos explicamos.

Respecto a la determinación de hecho número uno (1) y dos (2), plasmadas en la mencionada moción, entendemos que no son pertinentes a las controversias atendidas en el caso de autos, pues hacen alusión a investigaciones previas ejecutadas por el perito de la parte apelada, las cuales no inciden sobre la investigación realizada a la parte apelante.[12] Sobre la determinación de hecho número tres (3), del testimonio vertido por el perito de la parte apelada surge que la lotería clandestina o ilegal incidía en los recaudos de la lotería legal lo cual afectaba el Fondo General, fondos para los municipios, fondos para la universidad y fondos para enfermedades catastróficas, pues estos se nutrían de los fondos generados por los juegos de azar legales.[13] Las determinaciones de hecho número cuatro (4) y seis (6) hacen alusión a la agencia gubernamental DACO, la cual no tiene jurisdicción sobre los asuntos de juegos de azar, por lo que es inmeritorio e impertinente incluirlas en la *Sentencia*. Referente a las determinaciones de hecho número cinco (5), siete (7) y nueve (9) entendemos que no son necesarias incluirlas en la *Sentencia*, pues son repetitivas[14] y no inciden sobre la controversia que atendió el foro primario en el recurso de autos. En cuanto a la determinación de hecho número ocho (8), la determinación de hecho número cinco (5) de la *Sentencia* apelada expresa lo mismo que se solicita añadir.[15] Finalmente, la determinación de hecho número diez (10) hace alusión al Reglamento Núm. 7389, *supra*, el cual es utilizado para realizar procesos adjudicativos en el Departamento de Hacienda bajo el Código de Rentas Internas de Puerto Rico de 2011, *supra*, o leyes similares, por lo que no es de aplicación a la controversia en el caso ante nuestra consideración. Por los fundamentos antes expuestos,

---

[12] Transcripción de la prueba oral de la vista celebrada el 25 de septiembre de 2023 (TPO), líneas 13-21, págs. 12-14.
[13] TPO, líneas 14-13, págs. 15-16.
[14] Véase, Anejo XVII del recurso, págs. 812-819.
[15] Íd.

concluimos que no incidió el foro sentenciador al negarse a acoger las enmiendas o determinaciones adicionales de hechos propuestas por la parte apelante.

En su segundo señalamiento de error, la parte apelante plantea que incidió el Tribunal de Primera Instancia al expedir el auto de *injunction* a favor de la parte apelada, a pesar de que existía un remedio adecuado en ley que no fue agotado por esta, haciendo alusión al Reglamento Núm. 7389, *supra*, del Departamento de Hacienda y al este último no haber establecido o probado un daño irreparable. No le asiste razón. Veamos.

Según esbozáramos, para expedir un recurso de *injunction*, el foro sentenciador debe determinar si la acción que lleva a cabo la parte contra quien se intenta conseguir el remedio extraordinario connota o no un agravio de patente intensidad al derecho del individuo que reclame una reparación urgente, de la cual no existe un remedio adecuado en ley.

En el presente caso, la parte apelante arguye que la apelada no agotó el remedio adecuado en ley bajo el Reglamento Núm. 7389, *supra*, de adjudicación ante el propio Departamento de Hacienda y que este tampoco logró demostrar que sufrió un daño irreparable. Lo cierto es que el propio Artículo 3 del Reglamento Núm. 7389, *supra*, mencionado por la parte apelante, establece que el Departamento de Hacienda, en su proceso adjudicativo, atenderá controversias, querellas, peticiones o reclamaciones bajo el Código de Rentas Internas de Puerto Rico de 2011, *supra*, y leyes similares. Al estar la controversia de este caso relacionada a un asunto sobre lotería clandestina bajo el Artículo 14 de la Ley Núm. 465 - 1947, *supra*, y el Artículo 15 de la Ley Núm. 10 - 1989, *supra,* el remedio propuesto en el Reglamento Núm. 7389, *supra*, ante el Departamento de Hacienda no es el adecuado en ley. Tampoco estamos ante una disposición que privara al foro sentenciador de

expedir el recurso de *injunction* a favor de la parte apelada. De igual forma, según el testimonio vertido por el perito de la parte apelada, el daño que conlleva la práctica de la lotería clandestina e ilegal es uno de patente intensidad, ya que incide en la recolecta de fondos hecha por la lotería legal la cual, a su vez, nutre el Fondo General de gastos del Gobierno de Puerto Rico.[16] Al no ser el proceso adjudicativo ante el Departamento de Hacienda el remedio adecuado en ley para vindicar una controversia respecto a la práctica ilícita de la lotería en Puerto Rico y al incidir en la recolecta de fondos que nutre el Fondo General de gastos del Gobierno, no le asiste razón a la parte apelante en su segundo señalamiento de error.

En su tercer señalamiento de error, la parte apelante nos plantea que erró el foro sentenciador al concluir que los sorteos llevados a cabo por esta en su plataforma digital constituyen una lotería clandestina. Tampoco le asiste razón. Nos explicamos.

El Artículo 14 de la Ley Núm. 465 - 1947, *supra,* expone que el establecimiento, conservación y explotación de loterías en Puerto Rico, excepto en la forma descrita en este estatuto, queda prohibido. Por su parte, el Artículo 15 de la Ley Núm. 10 - 1989, *supra,* dispone que se considerarán prácticas prohibidas relacionadas con el juego de la lotería autorizado por esta ley, vender, anunciar y ofrecer para la venta boletos de lotería sin estar debidamente autorizado por una licencia vigente de vendedor de jugadas. Sobre ese particular, nuestro Tribunal Supremo ha expresado que, parte de los criterios a considerar para determinar si se está frente a una práctica de juegos de azar ilícita, son: (1) el pago o prestación que se hace o se promete para participar en el juego de azar; (2) el azar o suerte por medio del cual se gana el premio y, por último, (3) el premio que

---

[16] TPO líneas 14-13, págs. 15-16.

constituye algo de valor pecuniario que la persona recibe directamente u obtiene el derecho a recibir.

Luego de un examen sosegado del expediente judicial, los escritos presentados por las partes y la transcripción de la prueba oral, colegimos que la práctica llevada a cabo por la parte apelante constituye lotería clandestina, por lo tanto, es una acción ilegal.

Según surge del testimonio de la parte apelante, luego de registrarse en la plataforma, el usuario tiene acceso a diferentes sorteos que la referida plataforma tiene disponibles, y es este quien decide si participa de manera gratuita o mediante la compra de un boleto.[17] Indica, además, que las posibilidades de ganar el sorteo son de manera aleatoria y tiene como fin la entrega de un premio.[18] Tras aplicar los criterios jurisprudenciales esbozados por el Tribunal Supremo al testimonio vertido en el juicio, al igual que el foro primario, concluimos que la práctica llevada a cabo por la parte apelante es considerada lotería ilícita bajo el Artículo 14 de la Ley Núm. 465 - 1947, *supra*, y el Artículo 15 de la Ley Núm. 10 - 1989, *supra*. Independientemente de si la parte apelante le brindaba la opción a sus participantes de concursar de manera gratuita en un sorteo, en el momento en el que una sola persona adquiere un boleto de entrada al sorteo, esta se convierte en una lotería clandestina, lo cual violenta la ley.[19] Al tratarse de un juego de azar, mediante el cual se debe brindar una prestación para obtener un premio de valor pecuniario, no se cometió el tercer planteamiento de error.

Finalmente, la parte apelante nos indica que incidió el foro de origen al negarse a acoger la solicitud de enmienda *nunc pro tunc* de la sentencia, a los fines de disponer que la orden de cese y desista solo puede ser dirigida a la celebración de aquellos sorteos en la

---

[17] TPO líneas 10-24, págs. 43-44; líneas 25-14, págs. 44-45; líneas 5-17, pág. 54.
[18] Íd., líneas 10-24, págs. 43-44; líneas 24-12, págs. 54-55.
[19] TPO líneas 10-24, págs. 43-44; líneas 24-12, págs. 54-55; líneas 2-6, pág. 57.

plataforma de Don Rifa donde se requiera que las personas participantes paguen una prestación o se ofrezcan participaciones adicionales a cambio del pago de una prestación y no a la operación de la aplicación móvil para sorteos gratuitos o cualquier otra actividad permitida por ley. No le asiste razón, luego de revisar la *Sentencia* emitida por el Tribunal de Primera Instancia queda meridianamente claro que la orden de cese y desista emitida por este contra la parte apelante se dirige a la operación de la aplicación completa. Interpretarlo de otra manera estaría incidiendo en la discreción del foro sentenciador y permitiendo la práctica de lotería ilegal. De igual forma, debemos señalar que la solicitud de enmienda *nunc pro tunc* presentada por la parte apelante en el foro primario no cumplía con los requisitos establecidos en la Regla 49.1 de Procedimiento Civil de Puerto Rico, *supra,* y su jurisprudencia interpretativita,[20] lo cual nos lleva a concluir que no se cometió el referido error.

Luego de evaluar la *Sentencia* emitida por el Tribunal de Primera Instancia queda claro que la orden de cese y desista emitida contra la parte apelante se dirige a la operación completa de la aplicación. Interpretarlo de otra manera, redundaría en la permisión de la práctica de la lotería ilegal en Puerto Rico.

Por todo lo antes expuesto, y luego de un examen exhaustivo del expediente ante nos y la transcripción de la prueba oral, resolvemos que no incidió el Tribunal de Primera Instancia en su dictamen. En ausencia de pasión, perjuicio, parcialidad o error manifiesto, concluimos que procedía expedir el recurso de *injuction* y ordenar el cese y desista de las operaciones de la aplicación conocida como Don Rifa.

---

[20] Véase, *Otero Vélez v. Schroder Muñoz,* 200 DPR 76, 91 (2018) citando a *S.L.G. Coriano-Correa v. K-Mart Corp.,* 154 DPR 523 (2001).

## IV

Por las razones que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones